**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | |
|---|---|
| NAIOMI NICOLE JONES,     ) | |
|        ) | |
|     Plaintiff,     ) | |
|        ) | No. 2:21-cv-02805-TLP-jay |
| v.     ) | |
|        ) | |
| COMMISSIONER OF SOCIAL     ) | |
| SECURITY,     ) | |
|        ) | |
|     Defendant.     ) | |

**ORDER AFFIRMING DECISION OF THE COMMISSIONER**

Plaintiff appeals the Commissioner of Social Security Administration's ("SSA") denial of her application for a period of disability and disability insurance benefits. (ECF Nos. 1, 11-3.) For the reasons below, the Court **AFFIRMS** the Commissioner's decision.

**BACKGROUND AND THE ALJ'S DECISION**

In September 2018, Plaintiff applied for a period of disability and disability insurance benefits under Title II of the Social Security Act. (ECF No. 11-7 at PageID 246). She alleged disability because of irritable bowel syndrome, chronic anal fissures, interstitial cystitis, extreme anxiety/panic attacks, tachycardia, occipital neuralgia/migraines, cervical spondylosis, sacroilitis, chronic fatigue, and lupus. (*Id.* at PageID 246.) The relevant time for Plaintiff's Title II claim is from the alleged onset date of January 15, 2015, until December 31, 2019, the date when her insured status expired ("date last insured"). (*Id.* at PageID 301.) The administrative law judge ("ALJ") applied a five-step sequential evaluation process to determine whether Plaintiff is

1

disabled under 20 C.F.R. § 404.1520(a). (*Id.* 11-3 at PageID 44–61.) In the end, the ALJ found
that Plaintiff is not disabled.

The Court will first explain the five-step process an ALJ uses to decide whether an
applicant is disabled, and then the Court will present the ALJ's findings in this case.

## I.    The Disability Test

Under the Social Security Act, the first question is whether Plaintiff is disabled.
Congress defines "[d]isability" as "the inability to engage in any substantial gainful activity by
reason of any medically determinable physical or mental impairment . . . which has lasted or can
be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §
423(d)(1)(A). And to decide whether a person is disabled, the ALJ uses a five-step evaluation.
20 C.F.R. § 404.1520(a)(4)(i–v). The applicant bears the burden of proving the first four steps.
*See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482
U.S. 137, 146 (1987)). But, at the fifth step, "[t]he burden of proof shifts to the Commissioner . .
. [to prove] that there is work available in the economy" that Plaintiff can perform. *Id.* at 391.

The ALJ first looks at whether the applicant is currently engaged in substantial gainful
activity ("SGA"). *See* 20 C.F.R. § 404.1520(a). SGA is "work activity that involves doing
significant physical or mental activities." 20 C.F.R. § 416.972(a)(4)(i). If the applicant is
engaged in SGA, then the analysis ends there. *See* 20 C.F.R. § 404.1520(a)(4)(i).

The ALJ then analyzes in the second step whether the applicant has a medically
determinable impairment, or a combination of impairments, that meets the definition of "severe."
*See* 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is "severe" if it significantly limits the
person's ability to perform basic work activities. *See* 20 C.F.R. § 416.920(c). But the
impairment is not severe if the medical information establishes only a "slight abnormality that

2

minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).

In the third step, the ALJ must determine whether the applicant's impairments either meet or medically equal the criteria of an Appendix 1 listing. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the applicant is disabled. *Id*. If not, the ALJ looks further to determine the applicant's "residual functional capacity" ("RFC") to perform past work. 20 C.F.R. § 404.1545. RFC refers to an individual's ability to do physical and mental work on a sustained basis despite the limitations from the impairments. 20 C.F.R. § 404.1520(e).

Fourth, if she has the RFC to perform the requirements of her past relevant work, the applicant is not disabled, and the analysis ends here. *See* 20 C.F.R. § 404.1520(a)(4)(iv). But if the applicant does not have the RFC to return to her past work, then the analysis goes on to the fifth and final step. *Id*. Finally, the ALJ will evaluate the applicant's ability to do any other work given her RFC, age, education, and work experience. *See* 20 C.F.R. § 404.1520(a)(4)(v). If the applicant cannot perform other work, then she qualifies as disabled. *Id.*

## II.    The ALJ's Findings

Applying that process in this case, the ALJ made these findings:

1.    The claimant last met the insured status requirements of the Social Security Act on December 31, 2019.

2.    The claimant did not engage in substantial gainful activity during the period from her alleged onset date of January 15, 2015 through her date last insured of December 31, 2019 (20 CFR 404.1571 et seq.).

3.    Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the cervical and lumbar spine; dysautonomia; migraines; chronic fatigue syndrome; anxiety; and depression (20 CFR 404.1520(c)).

4.    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of

3

one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1
(20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can stand and walk six hours and sit six hours in an eight-hour workday. She can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. She can have occasional exposure to pulmonary irritants, but should avoid all exposure to workplace hazards. The claimant can have occasional contact with the general public and tolerate occasional changes in the workplace environment.

6.    Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.    The claimant was born on March 19, 1984 and was 35 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8.    The claimant has at least a high school education (20 CFR 404.1564).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11.   The claimant was not under a disability, as defined in the Social Security Act, at any time from January 15, 2015, the alleged onset date, through December 31, 2019, the date last insured (20 CFR 404.1520(g)).

(ECF No. 11-3 at PageID 44–61.)

In summary, the ALJ determined that Plaintiff suffered from multiple severe impairments under 20 C.F.R. § 404.1520(c), including degenerative disc disease of the cervical and lumbar spine; dysautonomia; migraines; chronic fatigue syndrome; anxiety; and depression. (ECF No.

11-3 at PageID 46.)  Even so, the ALJ found that she did not have an impairment or combination

of impairments listed in or medically equal to one in 20 C.F.R. Part 404, Subpart P, Appendix 1.

(*Id.* at PageID 48.)  As for Plaintiff's RFC, the ALJ found that Plaintiff could perform light work

with limitations under 20 C.F.R. § 404.1567.  (*Id.* at PageID 51.)  Although the ALJ found that

Plaintiff could not return to her past work, the ALJ found that Plaintiff could perform many jobs

, and so he denied Plaintiff's application.  (*Id.* at PageID 59–60.)  The Appeals Council denied

Plaintiff's request for review.  (*Id.* at PageID 32.)

Plaintiff now appeals to this Court.  Plaintiff alleges the ALJ made six errors.  (ECF No.

13 at PageID 1426–33.)  The Court will now set out the standard of review and then address each

alleged error.  (*See id.* at PageID 1425–26.)

## STANDARD OF REVIEW

Courts evaluate an ALJ's social security decision with a deferential standard.  "In social

security cases, the Commissioner determines whether a claimant is disabled within the meaning

of the Social Security Act and thereby entitled to benefits."  *Blakley v. Comm'r of Soc. Sec.*, 581

F.3d 399, 405 (6th Cir. 2009) (citing 42 U.S.C. § 405(h) (2018)).  The district court's review of

that determination "is limited to whether the ALJ applied the correct legal standards and whether

the findings of the ALJ are supported by substantial evidence."  *Id.*  (citing *Key v. Callahan*, 109

F.3d 270, 273 (6th Cir. 1997)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir.

2001).  "Substantial evidence requires more than a mere scintilla, but less than a preponderance;

substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016)

(internal quotation marks and citations omitted).  "[I]f substantial evidence supports the ALJ's decision, [the] [c]ourt defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley*, 581 F.3d at 406 (quoting *Key*, 109 F.3d at 273); *see also Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) ("When deciding under 42 U.S.C. § 405(g) whether substantial evidence supports the ALJ's decision, we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility.").  That said, the reviewing court must find a lack of substantial evidence when the ALJ fails to follow agency rules and regulations, "even where the conclusion of the ALJ may be justified based upon the record."  *Miller*, 811 F.3d at 833 (internal citation and quotation marks omitted).

## ANALYSIS

The Court will now consider each error Plaintiff alleges.  The Court has rearranged the alleged errors to better follow the order of the ALJ's findings.

## II.    Non-severe Medical Conditions: Irritable Bowel Syndrome, Anal Fissures and Bladder Irregularity

At step two of the analysis, the ALJ found that Plaintiff's degenerative disc disease of the cervical and lumbar spine, dysautonomia, migraines, chronic fatigue syndrome, anxiety, and depression qualified as severe impairments.  (ECF No. 11-3 at PageID 46.)  But the ALJ found that Plaintiff's mild COPD with asthma features was non-severe.  (*Id.* at PageID 46–47.) Likewise, the ALJ found that Plaintiff's irritable bowel disease and history of anal fissures were not severe.  (ECF No. 11-3 at PageID 47.)  Plaintiff challenges this last finding.  (ECF No. 13 at PageID 1429.)  And Plaintiff claims that the ALJ should have found that her bladder irregularity is a severe impairment also.  (*Id.*)

Defendant responds that substantial evidence supports the ALJ's finding that Plaintiff's irritable bowel disease and anal fissures do not amount to a severe impairment.  (ECF No. 15 at

PageID 1441.)  And as for the bladder irregularity, the SSA asserts that this is a symptom of

Plaintiff's dysautonomia and that the ALJ had found that the dysautonomia was a severe

impairment.[1]  (*Id.* at PageID 1442.)  The SSA adds that if the ALJ made errors at this step, they

would be legally insignificant.  (*Id.*)  The Court will now address each of these arguments.

### A.    Irritable Bowel Syndrome and Anal Fissures

To begin, the Court finds that substantial evidence supports the ALJ's finding that

Plaintiff's irritable bowel syndrome and anal fissures are not severe impairments.  The ALJ cited

multiple places in the record that support these findings.  He noted that in August 2016, Plaintiff

reported her anal fissures had resolved.  (ECF No. 11-3 at PageID 4; *see* ECF No. 11-11 at

PageID  801.)  Similarly, he pointed out that in December 2016, Plaintiff denied all

gastrointestinal symptoms.  (ECF No. 11-3 at PageID 47; *see* ECF No. 11-11 at PageID 780.)

And he noted that Plaintiff's ultrasound studies and her abdominal and pelvic CT scan from

October 2018 showed normal results.  (ECF No. 11-3 at PageID 47; *see* ECF No. 11-10 at

PageID 713.)  He also relied on Dr. Munn's notes and explained that Plaintiff "reported using

Phenergan as needed and Lomotil prescribed as three times a week as needed, but the claimant

did not usually take it very frequently."[2]  (ECF No. 11-3 at PageID 47; *see* ECF No. 11-10 at

PageID 714.)  He also noted that in November 2018, Dr. Burbeck described Plaintiff's irritable

---

[1] The SSA's argument here slightly misses the mark.  The ALJ and Plaintiff both recognize that
bladder issues are linked with dysautonomia (ECF No. 13 at PageID 1429), and the ALJ noted
"to the extent that she has had infrequent bladder related issues and rare tachycardia, the
undersigned notes that these conditions can be associated with dysautonomia, which has been
considered severe."  (ECF No. 11-3 at PageID 54.)  But the ALJ did separately consider whether
Plaintiff's interstitial cystitis (in other words, her bladder issues) arise to the level of a severe
impairment on its own.  (*Id.*)  The ALJ made this finding within his step four analysis of
Plaintiff's dysautonomia, which may have contributed to the confusion on this matter.
[2] Dr. Catherine Munn is an internist at Baptist Memorial Health Care.  (*See* ECF No. 11-10 at
PageID 610.)

bowel disease as under control.[3]  (ECF No. 11-3 at PageID 47; *see* ECF No. 11-11 at PageID 754.)  And he wrote that Plaintiff reported a need to defecate most nights around the same time, which, in his view, shows bowel regularity.[4]  (ECF No. 11-3 at PageID 47; *see* ECF No. 11-14 at PageID 1232.)

With all this, the ALJ had substantial evidence to support his finding that Plaintiff's irritable bowel syndrome and rectal fissures are non-severe impairments.  But Plaintiff argues that other places in the record show that her irritable bowel syndrome and rectal fissures are severe.  (ECF No. 13 at PageID 1428–29.)  First, Plaintiff claims that her prescription for Lomotil is for 4 times a day, not 3 times a week.  (*Id.* at PageID 1429.)  But the Court finds that the record about the Lomotil prescription is unclear and that the ALJ came to a reasonable conclusion on this issue.  For example, one place in the record says that in May 2016 the Lomotil prescription was for four times a day as needed (ECF No. 11-9 at PageID 463), but Dr. Munn's notes from December 2018 state: "Pt has history of IBS and is taking phenergan TID PRN, and is lomotil taking three times a week PRN (but does not usually take it very frequently)."  (ECF No. 11-10 at PageID 714 (errors in original).)   And so, given the conflicting records, the Court finds that the ALJ did not err in assessing Plaintiff's Lomotil use or prescription.[5]

---

[3] Dr. Joy Burbeck is a physician with Baptist Memorial Health Care.  (*See* ECF No. 11-11 at PageID 736, 754.)

[4] In her brief, Plaintiff admits that her bowel movements are regular in timing, but Plaintiff claims, without providing any citation to the record, that "she spends hours each night in the bathroom as it takes her approximately one (1) hour to manage a single bowel movement." (ECF No. 13 at PageID 1429.)  But the Court declines to consider this assertion because she gave no record citation for it.

[5] In arguing her impairments are severe, Plaintiff writes in her brief that she uses lidocaine ointment before each bowel movement.  (ECF No. 13 at PageID 1429.)  But this does not change the Court's conclusion.  The ALJ considered Plaintiff's lidocaine usage (ECF No. 11-3 at PageID 47.)  And Plaintiff's medical records reflect that she uses the lidocaine as needed and her anal fissures are resolved.  (*See* ECF No. 11-11 at PageID 801 ("Fissures are resolved. Pt uses lidocaine for fissures PRN, but states they have all resolve[d] at this time.").

Next, Plaintiff argues that she suffers from chronic constipation and diarrhea and that her medical records support this. (ECF No. 13 at PageID 1429.) And to support this point, Plaintiff points to a doctor's note from June 2019. This note states:

> She also has a long history of gastric dysregulation. She tells me that constipation and diarrhea alternate and that she has had anal fissures in the past. She describes no structural issues at this time, but that dysregulation persists. She describes awakening suddenly most nights at around 3:00am with a sudden urge to defecate and that she has to get up and go immediately, and that there is no other time of day where she can accomplish a bowel movement. Urinary urgency and frequency is an issue.

(ECF No. 11-14 at PageID 1232.)

Even so, substantial evidence supports the ALJ's finding that Plaintiff's irritable bowel syndrome and history of rectal fissures are non-severe impairments. Indeed, this June 2019 note specifies that Plaintiff had no anal fissures at the time and shows, as the ALJ explained, that Plaintiff's bowel movements are regular, although inconvenient. (ECF No. 11-14 at PageID 1232.) And so the Court finds that substantial evidence supports the ALJ's conclusion that Plaintiff's irritable bowel syndrome and anal fissures are non-severe impairments.

Even if the records Plaintiff cites could support a finding that these impairments are severe, it is not for this Court to reweigh the evidence. *See Preston v. Comm'r of Soc. Sec.*, No. 22-4026, 2023 WL 4080104, at *3 (6th Cir. June 20, 2023) ("The existence of potentially conflicting evidence is immaterial so long as substantial evidence supports an ALJ's determination." (citing *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012)). Indeed, "[t]he substantial-evidence standard…presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.'" *Blakely*, 581 F.3d at 406 (internal quotation marks and citing reference omitted).

### B.    Interstitial Cystitis

Plaintiff also claims that the ALJ should have found that Plaintiff's bladder irregularity was a severe condition. The Court construes this as an argument that the SSA should have found Plaintiff's interstitial cystitis to be a severe impairment.[6] But the Court finds her position unpersuasive. The ALJ found that "there is no indication of chronic interstitial cystitis that rises to the level of a severe impairment." (ECF No. 11-3 at PageID 54.) And the ALJ backs this finding up with substantial evidence. He noted that while Plaintiff "testified she has to urinate very frequently, the record reveals scant complaints consistent with her testimony." (*Id.*) The ALJ also noted that Plaintiff's interstitial cystitis improved with medication. (*Id.*; *see* ECF No. 11-12 at PageID 999, 1001.)

### C.    Legal Insignificance

And, lastly, as the SSA explains, even if the ALJ erred at step two, that error would be legally insignificant. Because he found that Plaintiff had at least one severe impairment, the ALJ assessed Plaintiff's ability to work during step four. And by extension, since the ALJ analyzed Plaintiff's impairments together at step four, the failure to find additional severe impairments at step two is not a reversible error or grounds for remand. *See Fisk v. Astrue*, F. App'x 580, 583 (6th Cir. 2007); *Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 842 (6th Cir. 2005).

At step four, the ALJ considered Plaintiff's bladder issues. Indeed, specific to her bladder issues, the ALJ stated at step four, "while she testified she has to urinate very frequently, the record reveals scant complaints consistent with her testimony (Exhibit 8F/4; 9F/55; 10F/14-

---

[6] In her application for disability benefits, Plaintiff listed interstitial cystitis as a disabling condition, not bladder irregularity. (ECF No. 11-7 at PageID 246.)

15)." (ECF No. 11-3 at PageID 54.)  So the ALJ considered the bladder issues when crafting the RFC.

And, lastly, although the ALJ did not discuss Plaintiff's irritable bowel syndrome or anal fissures at step four, this does not amount to a failure to consider all the impairments together. Under SSR 96-8p, an ALJ must "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184, at *5 *see also* 20 C.F.R. § 404.1545(e).  But the Sixth Circuit clarified this duty in *Emard v. Commissioner of Social Security*, 953 F.3d 844 (6th Cir. 2020).  The ALJ in *Emard* did not discuss the plaintiff's non-severe impairments when he assessed the plaintiff's RFC.  953 F.3d at 851.  Still, the Sixth Circuit found that the ALJ's referencing SSR 96-8p, discussing the functional limitations stemming from Plaintiff's non-severe impairments during step two, and noting that she had "considered the entire record and 'all symptoms,'" showed that the ALJ properly considered all of the plaintiff's impairments when deciding Plaintiff's RFC at step four. *Id.* at 851–52.

So too here, the ALJ stated that he considered "all symptoms" when deciding Plaintiff's RFC and that he decided the RFC after "a careful consideration of the entire record." (ECF No. 11-3 at PageID 51–52.)  Further, when he assessed Plaintiff's RFC, the ALJ noted that Plaintiff alleged disability based on irritable bowel syndrome and anal fissures.  (*Id.*)  And when setting out the applicable law, the ALJ explained that under SSR 96-8p, he must consider both severe and non-severe impairments when deciding Plaintiff's RFC.  (*Id.* at PageID 45.)  What is more, during step two of the analysis, the ALJ discussed Plaintiff's irritable bowel syndrome and anal fissures, noting that the record showed the conditions were under control, that imaging was

11

normal, and that Plaintiff's bowel movements were regular.[7] (*Id.* at PageID 47–48.)  And so the Court finds that the ALJ properly considered Plaintiff's impairments in combination and that any error at step two is harmless.

### D.    Substantial Evidence Supports No Limitation for Plaintiff's Bowel and Blader Issues

Still, Plaintiff argues that the RFC glosses over limitations stemming from her bowel and bladder issues.  Simply put, Plaintiff asserts that the ALJ's findings about her bowel and bladder regularity are wrong and that this matters because she claims the Vocational Expert ("VE") testified that if Plaintiff "had to work close to a bathroom and due to frequent use of the bathroom was off task 15% of the time, then she is not employable." (ECF No. 13 at PageID 1429.)  Plaintiff's position here misstates the VE's testimony.  The VE testified that if Plaintiff was off task 15% of the day she would not be employable.  (ECF No. 11-3 at PageID 101–102.)  But this testimony was not specific to bathroom use.  (*Id.*)  Likewise, the VE did not testify about Plaintiff's employability if she needed to work near the bathroom.  (*Id.*)

---

[7] That said, the ALJ at no point stated what, if any, functional limitations Plaintiff's irritable bowel syndrome and anal fissures cause.  *Harrington v. Saul*, No. 3:20-CV-00852-JRK, 2021 WL 3174273, at *10 (N.D. Ohio July 9, 2021), *report and recommendation adopted sub nom. Harrington v. Comm'r of Soc. Sec.*, No. 3:20 CV 852, 2021 WL 3165836 (N.D. Ohio July 26, 2021) (remanding because the ALJ "never discussed what (if any) functional limitations" the plaintiff's non-severe impairment causes).  Still, the ALJ did everything but explicitly state Plaintiff's irritable bowel syndrome and anal fissures do not functionally limit her.  Indeed, when the ALJ found that the two conditions were non-severe, he noted that the record showed the two conditions were under control, that imaging was normal, and that Plaintiff's bowel movements were regular.  (ECF No. 11-3 at PageID 47–48.)  And so, the Court finds *Emard* satisfied here, although it would be better had the ALJ to explicitly stated that no functional limitation is present.  953 F.3d 844.  In any event, Plaintiff has made no argument that the ALJ failed to follow *Emard* or consider the IBS or anal fissures along with her other impairments, and, instead, the crux of Plaintiff's argument about the bowel issues is that the ALJ improperly found that Plaintiff has bowel regularity and that this finding caused him to err at step two and led to an erroneous RFC at step four.  (ECF No. 13 at PageID 1429.)  But as explained in Section II(a), substantial evidence supports the ALJ finding that Plaintiff has bowel regularity.

12

In the end, substantial evidence supports the ALJ's decision to exclude any limitation

based on Plaintiff's irritable bowel syndrome or interstitial cystitis.   Indeed, under Section II(a),

substantial evidence supports the ALJ's finding that Plaintiff has bowel regularity.  And, as to

bladder issues, the ALJ considered her testimony about how often she needed to urinate but

found the "record reveals scant complaints consistent with her testimony."[8]  And, as explained

below, the ALJ is correct about the record.  Likewise, the Court finds that the ALJ is correct that

Plaintiff's "interstitial cystitis tended to be marked by rare acute episodes," rather than being a

continuous issue.  (ECF No. 11-8 at PageID 405.)[9]

To begin, Plaintiff testified that she has "to urinate sometimes in the morning, like every

five minutes for a certain amount of hours.  And it seems to get a little bit better throughout the

day.  But I also take medication for that, and I also take a little more medication if I need it."

(ECF No. 11-3 at PageID 85.)  The Court first notes that this testimony is unclear about how

often this urination problem presents itself.  (*Id.*)

Next, there is little to no evidence in the record supporting Plaintiff's testimony that she

needs to urinate every five minutes in the morning.  Indeed, only one medical record reveals that

Plaintiff, at any point, needed to urinate every five minutes.  (ECF No. 11-12 at PageID 1009.)

---

[8] About Plaintiff's bladder issues and interstitial cystitis, the ALJ found:

> [Plaintiff's] interstitial cystitis tended to be marked by rare acute episodes, such as
> in mid 2015 (see, e.g. Exhibit 4F/13) but otherwise improved with medication, such
> that there is no indication of chronic interstitial cystitis that rises to the level of a
> severe impairment (Exhibit 9F/24).  Further, while she testified she has to urinate
> very frequently, the record reveals scant complaints consistent with her testimony
> (Exhibit 8F/4; 9F/55; 10F/14-15).

(ECF No. 11-3 at PageID 54.)

[9] For instance, Plaintiff went to the ER for urine retention and urination frequency issues in May
2015, and reported the symptoms starting only 8 hours before.  (ECF No. 11-8 at PageID 405.)

But this record gave no indication how often this happened, much less that this level of frequency was a continuous issue. (*Id.*) And while later records from her urologist note that Plaintiff has urination frequency issues (ECF No. 11-12 at PageID 1001, 1005),[10] these records lack detail on this point, and none of these records suggest that Plaintiff needed to urinate every five minutes.[11]

What is more, Plaintiff's urologist's records show that medicine helps Plaintiff with this issue. (ECF No. 11-12 at PageID 999, 1001.) Likewise, Plaintiff testified that her urination issues improve throughout the day and that she has medication for the issue. (ECF No. 11-3 at PageID 85.) And no medical opinion in the record states that her urination issues would affect her ability to work.[12] (*See* ECF No. 11-4 at PageID 122, 149; ECF No. 11-14 at PageID 1362–63.) And so the Court finds that the ALJ properly considered Plaintiff's interstitial cystitis and that substantial evidence supports the RFC without any limitation for Plaintiff's interstitial cystitis or irritable bowel syndrome. *See Baker v. Colvin*, No. CIV.A. 3:12-00479, 2015 WL 1013981, at *18 (M.D. Tenn. Mar. 9, 2015), *report and recommendation adopted*, No. 3:12-CV-00479, 2015 WL 1546360 (M.D. Tenn. Apr. 6, 2015) ("As can be seen, the ALJ was aware of Plaintiff's interstitial cystitis and treatment. Because the ALJ was aware of Plaintiff's interstitial cystitis and determined that the record did not reflect that, between November 4, 2008 and March 20, 2010, she had many complaints regarding her interstitial cystitis beyond occasional

---

[10] As Plaintiff points out, there is also one note from her neurologist indicating that Plaintiff reported frequency and retention issues. (ECF No. 11-14 at PageID 1232.) But this medical record provides no detail on this point. (*Id.*)

[11] If there is another record that indicates Plaintiff has ever needed to urinate every five minutes, Plaintiff has not pointed it out to the Court.

[12] Indeed, the state agency medical consultants both wrote: "12/26/18 Urology for urinary urgency controlled with Rx normal exam no significant interstitial cystitis." (ECF No. 11-4 at PageID 123, 149.) And Plaintiff's treating physician did not give her a limitation for urinary frequency either. (ECF No. 11-14 at PageID 1362–63.)

14

dysuria and urine retention, the ALJ was not bound to incorporate limitations for this condition in his RFC determination.")[13]  *See* SSR 15-1p (SSA Mar. 18, 2015): Titles II and XVI: Evaluating Cases Involving Interstitial Cystitis (IC).[14]

## III.    Substantial Evidence Supports Plaintiff's RFC

When the ALJ decided Plaintiff's RFC, he applied a two-step process.  He first found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms."  (ECF No. 11-3 at PageID 52.)  But he also found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [his] decision."  (*Id.*)  In the end, the ALJ found Plaintiff could perform light work with certain limitations.  The Court now considers the errors Plaintiff alleges related to the ALJ's RFC findings.[15]

---

[13] *Owings v. Colvin*, 133 F. Supp. 3d 985, 1001 (M.D. Tenn. 2015) ("Finally, although plaintiff testified his medications require that he urinate 10 to 20 times daily, apart from his testimony, there is nothing in the record to support that argument."); *Jennifer A. v. O'Malley*, No. 6:24-CV-44-CHB, 2024 WL 4652211, at *5 (E.D. Ky. Nov. 1, 2024); *Robinson v. Astrue*, No. 1:10-CV-689, 2011 WL 6217436, at *6 (S.D. Ohio Dec. 14, 2011) ("Plaintiff testified that the medication for her bladder problem 'works pretty good.' … Certainly there are no medical opinions in the record that Plaintiff's bladder and bowel problems limit her ability to work. The Court, therefore, finds no error in the ALJ's resolution of Plaintiff's bladder and bowel impairments.").

[14] As the SSA writes in a policy specific to interstitial cystitis:

> In evaluating the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities; *medications or other treatments the person uses*, or has used, to alleviate symptoms; *the nature and frequency of the person's attempts to obtain medical treatment for symptoms*; and statements by other people about the person's symptoms.

SSR 15-1P (S.S.A. Mar. 18, 2015) (emphasis added).

[15] The Court already considered one of Plaintiff's RFC challenges in the section before.  The Court completed that analysis in the earlier section because it was like Plaintiff's alleged error about the ALJ's step two findings.

A.    **Side Effects**

Plaintiff first claims that the ALJ erred because, as she alleges, he disregarded her

testimony about the side effects of her medications.  (ECF No. 13 at PageID 1426.)  And indeed,

when evaluating the limiting effects of a claimant's symptoms, the ALJ should consider the side

effects of any medication taken to alleviate symptoms.  *See Rogers v. Commissioner of Social

Security*, 486 F.3d 234, 247 (6th Cir. 2007); 20 C.F.R. § 416.929(c)(3)(iv).  In response, the SSA

states that the ALJ did consider the side effects of Plaintiff's medications.  (ECF No. 15 at

PageID 1452.)  The Court agrees with the SSA.

In arguing that the ALJ disregarded Plaintiff's testimony about her side effects, Plaintiff

directs the Court to four places in the hearing transcript.[16]  The first exchange is as follows:

> Attorney: Okay, what sort of treatment do you have for migraines?
>
> Plaintiff: I have Cambia, which is powder.  It helps me the most.  I have muscle
> relaxers.  I have pain medication.  I take some Advil like everyone else does.  I just
> take those pills and do the best I can and lay there in a dark room and close my
> eyes.
>
> Attorney: Do you get Botox?
>
> Plaintiff: Oh, yeah, I do get Botox every three months, on the dot.  It's 27 injections
> in the occipital muscles in the head and in the neck and shoulders and face muscles
> as well.

(ECF No. 11-3 at PageID 83.)  But Plaintiff reported no side effects to the ALJ during this

exchange.  (*Id.*)  To the contrary, Plaintiff noted that Cambia helps her.  (*Id.*)  And so the ALJ

did not disregard any testimony about her side effects here.

Next, Plaintiff points the Court to the following exchange:

---

[16] Plaintiff further claims that the "side effects [Plaintiff] testified to at the hearing include sleep
disturbances, dizziness, weakness, nausea, constipation, fatigue, confusion, and memory loss."
(ECF No. 13 at PageID 1427.)  But a review of the transcript reveals that Plaintiff did not testify
that her medications cause all these issues.

Attorney: Okay.  Are your medications partly responsible for your fatigue?

Plaintiff: Oh, that's definitely a part.  I mean, someone said my medications, like a horse would go down on.  So yeah.

Attorney: Okay.  What medications do you think are causing your fatigue or contributing to it?

Plaintiff: Well, definitely Phenergan and gabapentin, beta blockers make -- I have a beta blocker, and my medicine for my anxiety.  But I have to take that.  But that's a low dose.  I think it's mainly the gabapentin.  I mean, it's hard to say, because I take like 16 medications a day.  So the combination of that is, you know -- hard to say exactly which one.

(*Id.* at PageID 85.)  But, contrary to Plaintiff's claim, the ALJ did consider this in his decision.

He stated:

The claimant testified medications contribute to her fatigue, particularly Phenergan and gabapentin, but while some complaints of side effects are noted in the record, claimant typically discontinued medications rather than deal with side effects, and doctors did not generally document impaired cognition, attention, or concentration when examining the claimant.

(*Id.* at PageID 52.)

Plaintiff also points to an exchange between Plaintiff and her attorney in which the attorney asked Plaintiff whether she takes medication for her depression.  (*Id.* at PageID 88.) Plaintiff responded that she is allergic to serotonin and cannot take any medication that will change her serotonin level, and so the only medication she can take is Klonopin.  (*Id.*)  And while this exchange notes that Plaintiff suffered a side effect, it also indicates that Plaintiff no longer takes the medication.  (*Id.*)  And the ALJ made a broad note of this in his decision: "while some complaints of side effects are noted in the record, claimant typically discontinued medications rather than deal with side effects."[17]  (*Id.* at PageID 52.)

---

[17] In her brief, Plaintiff also notes various places in her medical record that note side effects she had from medications.  (ECF No. 13 at PageID 1428.)  But, these medical records either lack

In the final exchange Plaintiff relies on, her attorney asked her whether she suffered from brain fog. Plaintiff explained that she did and then stated, "[s]o, I've got that, plus all the medication, you know, side effects going against me." (*Id.* at PageID 89.) But this is only a broad mention of side effects, and the ALJ included in his decision that Plaintiff has reported medication side effects. Indeed, the ALJ wrote: "Claimant sought a significant amount of treatment, and at various times, she reported side effects of medication." (*Id.* at PageID 58.)

And other places in the ALJ's decision show he considered Plaintiff's medication side effects. For example, when discussing Plaintiff's dysautonomia, the ALJ noted that Plaintiff "has had difficulty tolerating medications that could improve this condition (Exhibit 17F/9)." (*Id.* at PageID 54.) And when the ALJ discussed Plaintiff's anxiety, he noted "[w]hen she returned in December 2016, [Plaintiff] reported she was no longer seeking psychiatric care and she had stopped taking Prozac because it made her scratch herself." (*Id.* at PageID 55.) He also noted, "She stated she had been on Lexapro in the past but it had not been helpful, and she complained that Wellbutrin may be making her more anxious." (*Id.*)

What is more, Plaintiff's argument here is that the ALJ did not consider her testimony about her side effects. First, the Court finds this unpersuasive, because as shown above, the ALJ did consider Plaintiff's testimony about her side effects. But Plaintiff's argument is also flawed because, by discussing side effects at the hearing, the ALJ must have considered them. *Stec v. Comm'r of Soc. Sec.*, 432 F. Supp. 3d 719, 727 (E.D. Mich. 2020) ("ALJs do not have to mention side effects in their written decisions."); *Flynn v. Comm'r of Soc. Sec.*, No. 2:17-cv-11640, 2018 WL5306640, at *4 (E.D. Mich. Aug. 1, 2018), *adopted*, 2018 WL 5305077 (E.D.

---

detail, do not reference side effects, or suggest Plaintiff had side effects and stopped taking the medications. (*Id.*; ECF 11-10 at PageID 645–46.; ECF No. 11-14 at PageID 1253.).

Mich. Aug. 24, 2018) (remand was not needed when the ALJ did not discuss a medication side effect in the opinion because it was discussed at the hearing).

In sum, the ALJ did not ignore the side effects of Plaintiff's medications and made no error here.

### B.    Lumbar and Cervical MRI Findings

Next, Plaintiff claims that the ALJ erred when he found that Plaintiff's lumbar and cervical disc studies show only "mild findings" which are "simply incompatible with the degree of pain and functional debility alleged." (ECF No. 13 at PageID 1430; ECF No. 11-3 at PageID 53.) Plaintiff reasons that the "ALJ's statements in this regard do not accurately reflect the assessment and finding of Dr. Biswas, [Plaintiff's] treating neurologist at Semmes Murphey Clinic." (ECF No. 13 at PageID 1430.) Although Plaintiff claims that her evidence comes from Dr. Biswas' records, the records she uses here are actually Dr. Samuel Polk's.

First, Plaintiff relies on this portion of Dr. Polk's records to support her position:

A 36-year old female here today with the main complaint of back and bilateral lower limb pain. Since her last evaluation, we have done a repeat MRI of her lumbar spine and it does reveal two large disc herniations at L4-5 and L5-S1. Both herniations are slightly larger in comparison to the MRI in January 2020.

(ECF No. 11-15 at PageID 1375.) This note concerns a June 30, 2020, office visit Plaintiff had at Semmes-Murphey Clinic with Dr. Polk. (*Id.*)

Plaintiff also relies on this section of Dr. Polk's records:

Her main concern today is neck pain and bilateral shoulder girdle pain and at times it can cause some numbness and tingling down her right upper extremity. Review of her recent MRI in May 2019 does reveal multilevel disc degenerative disease and bulges from C4-5 to C6-7. Treatments were further discussed with Ms. Jones, and she states she would like to try interventional spine procedures for her neck pain and see if we can continually try to improve the sacroiliac pain. She denies any bowel or bladder incontinence, fevers, chills, weight loss, and trauma.

19

(*Id.* at PageID 1395.)  This note concerns a March 31, 2020, office visit Plaintiff had at Semmes-Murphey Clinic with Dr. Polk.  (*Id.*)

SSA counters and argues that the ALJ did not err in considering the objective testing. (ECF No. 15 at PageID 1453.)  The SSA further asserts that, when deciding whether Plaintiff is disabled, neither the ALJ nor the reviewing court can consider evidence that Plaintiff's condition worsened after her date last insured.  (*Id.*)  And so, with this, the SSA argues the Court should disregard Plaintiff's June 2020 imaging.  (*Id.*)

In the end, the Court finds that substantial evidence supports the ALJ's findings here—that the lumbar and cervical MRIs show only mild findings, which are "are simply incompatible with the degree of pain and functional debility alleged."  (ECF No. 11-3 at PageID 53.)  First, Plaintiff's imaging from June 2020 and her doctor's commentary on that imaging do not help her claim.  Indeed, Plaintiff "bears the burden of establishing that a disability began *before* [her] disability insurance expired."  *Seeley v. Comm'r of Soc. Sec.*, 600 F. App'x 387, 390 (6th Cir. 2015) (emphasis added).

In short, "[e]vidence of disability obtained after the expiration of insured status is generally of little probative value."  *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 845 (6th Cir. 2004) (citing reference omitted).  To be relevant, evidence from after the date last insured "must relate back to the claimant's condition prior to the expiration of her date last insured."  *Wirth v. Comm'r of Soc. Sec.*, 87 F. App'x 478, 480 (6th Cir. 2003).  What is more, the "post-date last insured evidence, to the extent that it relates back, is relevant only if it is reflective of a claimant's limitations prior to the date last insured, rather than merely his impairments or condition prior to this date."  *Abney v. Astrue*, No. CIV A 507-394-KKC, 2008 WL 2074011, at *6 (E.D. Ky. May 13, 2008).

And when evidence shows a condition has progressively worsened over time, an ALJ may err by dismissing this evidence if it is probative of whether the plaintiff was disabled before the date of last insured. *Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989) ("[T]he ALJ was …erroneously failing to draw any inferences from the medical and other evidence as to whether appellant was able to engage in substantial gainful activity prior to the expiration of his insured status."). But, at the same time, when evidence describes a deterioration of a plaintiff's condition after the date of last insured, the ALJ does not err by giving that evidence little weight. *See Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 506 (6th Cir. 2013) (allowing an ALJ to discount a physician's opinion which was based on a "questionnaire—created well after the date last insured— [which] likely described a deterioration in [the plaintiff's] condition, rather than [the plaintiff's] condition during the time period in question."); *see also Darrell G. v. Comm'r of Soc. Sec.*, No. 3:24-CV-025, 2025 WL 87929, at *9 (S.D. Ohio Jan. 14, 2025), *report and recommendation adopted by Darrell G., Plaintiff, v. Comm'r of Soc. Sec., Defendant.*, No. 3:24-CV-025, 2025 WL 510068 (S.D. Ohio Feb. 14, 2025).

With that in mind, the June 2020 lumbar MRI has little, if any, relevance in deciding whether Plaintiff was disabled before her date last insured. Plaintiff's date last insured was December 31, 2019, and, as Dr. Polk records indicate, the June 2020 lumbar MRI shows a worsened condition when compared with the January 2020 lumbar MRI. (ECF No. 11-15 at PageID 1367, 1375.) This means the June 2020 imaging shows that Plaintiff's condition deteriorated after January 2020, which would have been after Plaintiff's date last insured. And so the June 2020 MRI has little to no relevance.

And for all that, the ALJ did address the June 2020 MRI, stating "[w]hile imaging from June 2020 shows slight worsening, this occurred after the claimant's date last insured, and would

still support no more than moderate restrictions." (ECF No. 11-3 at PageID 50.) And the Sixth

Circuit has stated that spine imaging showing "mostly mild-to-moderate findings…offered

support to the ALJ's RFC determination [of light work]." *Downs v. Comm'r of Soc. Sec.*, 634 F.

App'x 551, 553 (6th Cir. 2016).

The Court next turns to Plaintiff's last points about her MRIs—Plaintiff's cervical MRI

from December 2017, cervical MRI from May 2019, and lumbar MRI from January 2020. And

substantial evidence supports the ALJ's finding that these radiological studies show only "mild

findings." Indeed, the imaging reports for the December 2017, May 2019 MRI, and January

2020 MRI all label the imaging findings as mild. (ECF No. 11-14 at PageID 1268–69, 1340–41,

1342–43.)

About the May 2019 MRI, Dr. Polk, commented, "[r]eview of her recent MRI in May

2019 does reveal multilevel disc degenerative disease and bulges from C4-5 to C6-C7." (ECF

No. 11-15 at PageID 1375.) And Plaintiff uses this comment to advance her claim that the ALJ

erred when finding the radiological studies show only "mild findings." (ECF No. 13 at PageID

1429–1430.) But, with this statement, Dr. Polk does not give any opinion on the severity of the

bulging discs, the multilevel disc degenerative disease, or on the MRI's findings otherwise.

(ECF No. 11-15 at PageID 1375.) And on the actual imaging report of the May 2019 MRI, the

findings are repeatedly listed as mild.[18] (ECF No. 11-14 at PageID 1340.) So substantial

evidence supports the ALJ's finding that the radiological studies indicate only "mild findings"

which are "simply incompatible with the degree of pain and functional debility alleged." (ECF

---

[18] Indeed, there are six findings on the May 2019 imaging report. Four of the findings are
described as "mild" and two are described as "normal." (ECF No. 11-14 at PageID 1340.) And
at the beginning of the impression section, the report states "multilevel degenerative changes as
described, not significantly progressed since the prior exam." (*Id.*)

No. 11-3 at PageID 53.); *see* 20 C.F.R. § 404.1529(c)(2) (objective medical findings help assess the intensity and persistence of a plaintiff's symptoms); *Moruzzi v. Comm'r of Soc. Sec.*, 759 F. App'x 396, 404 (6th Cir. 2018) (affirming ALJ's decision to discount the plaintiff's subjective complaints of pain in part due to lack of confirming objective evidence). And, in the end, these mild findings support the ALJ's conclusion that Plaintiff can perform light work. *See Downs*, 634 F. App'x at 553.

The Court will now turn to the ALJ's consideration of Plaintiff's daily activities in connection with her chronic fatigue syndrome.

## C.    Evidence of an Active Lifestyle

In assessing the symptoms of Plaintiff's chronic fatigue syndrome, the ALJ looked to evidence of Plaintiff's lifestyle. In sum, the ALJ found:

> Further, while she has endorsed debilitating fatigue, she stated that she has difficulty sleeping, which may contribute to her issues (see Exhibit 17F/17, 31), and some records show that she described her fatigue as only mild (Exhibit 7F/42). While claimant has reported fatigue, she also has endorsed working out regularly, including Pilates, which is rather rigorous (Exhibit 13F/40; 17F/51), and the absence of muscle atrophy, normal neurological findings, and normal strength all suggest she has the capacity for the range of light work described above. Moreover, the undersigned notes that as of September 2018, the claimant reported she had not presented for imaging for different condition because of "being busy with work and home" (Exhibit 17F/71). This statement tends to suggest the claimant's chronic fatigue syndrome does not substantially prohibit her work or activities of daily living.

(ECF No. 11-3 at PageID 53.) About these findings, Plaintiff argues mainly that, because her neurologist recommended she do yoga, the ALJ improperly characterized her yoga as evidence that Plaintiff leads an active lifestyle. (ECF No. 13 at PageID 1430–31.) Plaintiff also challenges the ALJ's reliance on the fact that Plaintiff once reported that she was "busy with work and home" in September 2018. (*Id.* at PageID 1430–31.) She explains that the work involved her selling hair products from her home in 2017 and 2018. (*Id.* at PageID 1431.) And

23

Plaintiff claims that she "was never able to successfully work and her hair product home sale business failed to generate any significant income." (*Id.*)

The SSA responds to Plaintiff's claims. (ECF No. 15 at PageID 1452.) About the yoga issue, the SSA states, "the fact that Plaintiff's neurologist encouraged her to increase her activity rather than decrease it, supports the ALJ's finding that she was not as limited as alleged." (*Id.*) And the SSA contends that the ALJ properly considered Plaintiff's September 2018 activities. (*Id.* at PageID 1454.)

The Court agrees with the SSA and finds that the ALJ did not err in considering Plaintiff's exercise and September 2018 activities. Here the ALJ looked to Plaintiff's Pilates in assessing her claim that she has debilitating fatigue. (ECF No. 11-3 at PageID 53.) This is not improper. ALJs may look to a plaintiff's daily activities when evaluating subjective symptoms. *See* 20 C.F.R. § 404.1529 ("Factors relevant to your symptoms, such as pain, which we will consider include: (i) Your daily activities…."); *Knapp v. Comm'r of Soc. Sec.*, No. 22-2055, 2023 WL 6800153, at *3 (6th Cir. Oct. 16, 2023) ("The ALJ reasonably relied on [the Plaintiff's] ability to carry out some activities of daily living, such as driving, shopping, fixing meals, doing small loads of laundry, and feeding and caring for her pet dog, in concluding that she was not as limited as she had claimed.") Likewise, the ALJ did not err in considering that Plaintiff was "busy with work and home" in September 2018. (ECF No. 11-3 at PageID 1430–31.); *Miller v. Comm'r of Soc. Sec.*, 524 F. App'x 191, 194 (6th Cir. 2013) (citing 20 C.F.R. §§ 404.1529(c)(3), 404.1571, 416.929(c)(3), 416.971) ("Further, the ALJ did not err by considering [Plaintiff's]

ability to maintain part-time employment as one factor relevant to the determination of whether he was disabled.").[19]

About working out, the record shows that Plaintiff engages in Pilates and yoga. (ECF No. 11-7 at PageID 273; ECF No. 11-14 at PageID 1253; ECF No. 11-14 at PageID 1243.) And at multiple doctor's visits she noted that yoga was benefitting her. (ECF No. 11-12 at PageID 1053; ECF No. 11-14 at PageID 1253.) Further, the fact that Plaintiff's doctor recommended she engage in yoga does not change this Court's conclusion. (ECF No. 11-15 at PageID 1383.) If anything, this shows that Plaintiff's doctor believed Plaintiff could do yoga and bolsters the ALJ's position. *See Warren v. Comm'r of Soc. Sec.*, 810 F. App'x 445, 450 (6th Cir. 2020) ("Moreover, [the plaintiff's] medical providers frequently recommended exercise to treat his conditions."); *Blaim v. Comm'r of Soc. Sec.*, 595 F. App'x 496, 499 (6th Cir. 2014) ("Even the mildness of [Plaintiff's] treatment-mostly pain medication, weight loss, and exercise-suggested that his ailments were comparatively mild.").

### D.    Weight Given to Consultive Examiner's Report and Treating Sources

Plaintiff next argues that the ALJ improperly discounted Dr. Hugh Overstreet and Dr. Allison Garrott's opinions and gave too much weight to Dr. Holcombe's opinion. As Plaintiff applied for social security disability in September 2018, the new rules for weighing medical

---

[19] And Plaintiff's claim that she "was never able to successfully work and her hair product home sale business failed to generate any significant income" does not change the Court's opinion. (ECF No. 13 at PageID 13.) First, Plaintiff does not provide any record citation for her claim here. (*See id.*) And, second, Plaintiff does not claim that the reason she could not work successfully and that the business failed was because of her fatigue. (*Id.*) Likewise, the fact that the work was ultimately unsuccessful does not cut against the reason why the ALJ used this information. Indeed, the ALJ looked to her busyness level in September (whether or not that busyness led to success) for the specific reason of assessing her claims about her fatigue. (ECF No. 11-3 at PageID 53.) And, lastly, the ALJ relied on multiple different medical records and facts about Plaintiff's daily life in assessing Plaintiff's claims about her fatigue. And, in the end, substantial evidence supports that Plaintiff can engage in light work.

opinions apply.  20 C.F.R. § 404.1520c.  And, under these rules, ALJs no longer give special

weight to the opinion of a treating medical source.  20 C.F.R. § 404.1520c(a).  Instead, to decide

the persuasiveness of a medical opinion, an ALJ considers five factors: (1) supportability, (2)

consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as

whether the medical source is familiar with evidence in the record.  20 C.F.R. § 404.1520c(c)(1)-

(5).  Still, the ALJ need only explain how he considered the supportability and consistency

factors—the two most important factors in deciding a medical opinion's persuasiveness.  20

C.F.R. § 1520c(b)(2).

        For the reasons below, the Court disagrees with Plaintiff and finds that the ALJ gave

valid reasons for discounting the opinions of Dr. Overstreet and Dr. Garrott and for crediting Dr.

Holcombe's opinion.

### 1.    Dr. Hugh Overstreet

        Dr. Hugh Overstreet gave his medical opinion on Plaintiff's ability to do work-related

activities.  (ECF No. 11-14 at PageID 1362.)  Dr. Hugh Overstreet is a physician specializing in

internal medicine.[20]  Plaintiff began seeing him in August 2019.  (*See* ECF No. 11-15 at PageID

1420.)

        The ALJ found Dr. Overstreet's opinion unpersuasive.  In making that decision, the ALJ

considered both the supportability and consistency factors.  20 C.F.R. § 404.1520c(c)(1)-(5).

Indeed, the ALJ observed that it seems Dr. Overstreet "offered an opinion based primarily upon

the claimant's subjective complaints."  (*Id.*)  As for consistency, the ALJ found that Dr.

Overstreet's opinion "is simply inconsistent with the mild objective findings, including the mild

---

[20] The ALJ states this in his decision and Plaintiff confirms this in her reply brief.  (ECF No. 11-3 at PageID 58; ECF No. 16 at PageID 1461.)

MRI findings, and inconsistent with the longitudinal record." (ECF No. 11-3 at PageID 58.)
The ALJ also pointed to an internal inconsistency within Dr. Overstreet's opinion. (*Id.*) And the
ALJ considered the other factors relevant to an opinion's persuasiveness as well. 20 C.F.R. §
404.1520c(c)(1)-(5). He observed that Dr. Overstreet "specializes in internal medicine rather
than orthopedics, and there is no indication he reviewed the claimant's mild radiological
studies." (*Id.*) And the ALJ noted that Plaintiff did not begin seeing Dr. Overstreet until August
2019. (*Id.*)

Plaintiff disputes the ALJ's conclusion that Dr. Overstreet's opinion conflicted with the
mild MRI findings. (ECF No. 13 at PageID 1431.) But in making this argument, Plaintiff refers
to the June 2020 MRI findings,[21] and for the reasons described in Section III(B) above, the June
2020 MRI findings are not relevant here.

Plaintiff also argues that Dr. Overstreet's records contradict the ALJ's finding that Dr.
Overstreet's opinion was "primarily based on Plaintiff's subjective complaints." (ECF No. 13 at
PageID 1431; ECF No. 11-3 at PageID 58.) To support her argument, Plaintiff explains that Dr.
Overstreet's medical records document his examinations and evaluations of Plaintiff. (ECF No.
13 at PageID 1431.) But the ALJ never found that Dr. Overstreet did not examine or evaluate
Plaintiff. Instead, the ALJ's point is that Dr. Overstreet's opinion was not based on these
examinations or evaluations. (ECF No. 11-3 at PageID 58.) Indeed, the ALJ stated,

> Dr. Overstreet described normal objective clinical findings (Exhibit 23F/15), which
> he continued to notate through the date last insured (Exhibit 23F/13). Despite
> normal objective clinical findings, Dr. Overstreet offered an opinion dated February
> 13, 2020 indicative of an inability to lift 10 pounds or stand, sit, or walk two hours
> in an eight hour day. He indicated the claimant could not sit more than zero minutes
> without changing position nor could she stand zero minutes before changing
> position. This would be compatible with the patient who is bedridden 100% of the

---

[21] Plaintiff relies on the June 2020 MRI findings here as she references an MRI that shows "large
herniated discs." (ECF No. 13 at PageID 1431.)

> time. However, he contradicted himself by estimating the claimant would need to
> walk around 15 minutes at a time. Dr. Overstreet then stated the claimant must lie
> down frequently due to back pain even though MRI studies showed only mild
> degenerative disc disease with no significant stenosis. He estimated the claimant
> could perform very little to occasional postural activities and he cited pain as
> decreasing her range of motion and mobility, but he documented no such findings
> in the two office visits prior to the claimant state last insured (Exhibit 21F)

(*Id.*) The Court has reviewed Dr. Overstreet's records and agrees with the ALJ that the objective

findings he made during her August 19, 2019, and October 23, 2019, visits (which are the only

two visits Plaintiff had with Dr. Overstreet before her date last insured) do not align with his

opinion. (ECF No. 11-14 at PageID 1362–63; ECF No. 11-15 at PageID 1418, 1420.)

In the end, Plaintiff's arguments here fail. The Court finds that the ALJ considered the

factors under 20 C.F.R. § 404.1520c(c)(1)–(5) and provided an adequate explanation to support

his conclusion. As a result, the Court affirms the ALJ's finding that Dr. Overstreet's report was

not persuasive.

### 2.    Dr. Allison Garrott

Dr. Allison Garrott is a psychologist who treated Plaintiff. (ECF No. 11-12 at PageID

1014.) And on May 23, 2019, she provided an opinion on Plaintiff's limitations. (*Id.* at PageID

1014–15.) The ALJ found this opinion to be partially persuasive. (ECF No. 11-3 at PageID 56.)

The ALJ specified that Dr. Garrott is a psychologist, not a medical doctor, and "while her

statement is certainly considered insofar as she offers opinions related to the claimant's

psychiatric issues, she lacks the expertise to offer a medical opinion on the claimant's physical

issues." (*Id.*) The ALJ noted that Dr. Garrott's only documented mental examination of Plaintiff

"revealed entirely normal clinical findings" and that these findings were hard to reconcile with

Dr. Garrott's suggested limitations. (*Id.*; *see* ECF No. 11-12 at PageID 1018.) And with this, the

Court finds that the ALJ explained the supportability and consistency factors.

The ALJ found Dr. Garrott's opinion only partially persuasive, in part because, according to the ALJ, "it is clear she considered physical complaints as a substantial factor in formulating her opinion." (ECF No. 11-3 at PageID 56.) Plaintiff challenges this finding, arguing "Dr. Garrott's functional capacity evaluation does not provide an opinion as to [Plaintiff's] physical conditions, only her cognitive limitations." (ECF No. 13 at PageID 1432.) But the Court disagrees with Plaintiff and finds that substantial evidence supports the ALJ's finding.

Indeed, in her opinion, Dr. Garrott responded to a question on whether Plaintiff could maintain a work routine without supervision. And Dr. Garrott stated: "It's not that she would need supervision – [t]he problem is her energy level & interference by health issues." (ECF No. 11-12 at PageID 1015.) And, as the ALJ points out, Dr. Garrott notes Plaintiff's physical issues at several points in her treatment records. (*See id.* at PageID 1028, 1033, 1035.) And so, with this in mind, substantial evidence supports the ALJ's finding that Dr. Garrott "considered physical complaints as a substantial factor in formulating her opinion." (*See* ECF No. 11-3 at PageID 56.) And, in any event, the ALJ did not entirely discredit Dr. Garrott's opinion and instead stated the opinion was "certainly considered insofar as she offers opinions related to the claimant's psychiatric issues." (*Id.*) Accordingly, the Court finds that the ALJ's reasoning shows proper consideration of the relevant factors, and the Court affirms the ALJ's finding that Dr. Garrott's opinion is partially persuasive. *See* 20 C.F.R. § 404.1520c(c)(1)–(5).

### 3.    Dr. Samuel Holcombe

The ALJ found Dr. Holcombe's opinion more persuasive than Dr. Garrott's. (ECF No. 11-3 at PageID 56–57.) Dr. Holcombe is a psychiatrist who completed a consultative examination of Plaintiff in September 2019. (ECF No. 11-13 at PageID 1185.)

The ALJ considered the persuasiveness of Dr. Holcombe's opinion. (ECF No. 11-3 at PageID 56–57.) And, in doing so, the ALJ explained that Dr. Holcombe is a psychiatrist who personally examined Plaintiff. (*Id.* at PageID 50, 56.) The ALJ found that Dr. Holcombe's opinion tracked his examination findings and Plaintiff's self-reported anxiety and depression issues. (*Id.* at PageID 56–57; *see* ECF No. 11-13 at PageID 1185–87.) The ALJ further noted that Dr. Holcombe's findings were also consistent with the longitudinal record. (ECF No. 11-3 at PageID 56–57.) And so the ALJ complied with 20 C.F.R. § 404.1520c(c)(1)–(5) and explained the supportability and consistency factors.

But Plaintiff claims that the ALJ erred in finding Dr. Holcombe's opinion more persuasive than Dr. Garrott's. Plaintiff explains that Dr. Holcombe "has never treated [Plaintiff] and does not have the longitudinal experience with [Plaintiff] that Dr. Garrott possesses." (ECF No. 13 at PageID 1432.) And, without providing any record citation, Plaintiff argues that Dr. Holcombe has not reviewed the medial records and "in cases where greater weight is given [to] a consultative opinion than to a treating and examining source, the consultative examiner should have reviewed the medical records." (ECF No. 13 at PageID 1432.)

But the Court finds Plaintiff's position unpersuasive. First, although Dr. Holcombe has not treated Plaintiff, the ALJ may still find his opinion more persuasive than Dr. Garrott's. 20 C.F.R. § 404.1520c(a) (explaining that ALJs no longer give special weight to the opinion of a treating medical source). And so, to the extent that Plaintiff argues the ALJ must prefer Dr. Garrott's opinion because she is the treating source, the argument must fail.

Secondly, Plaintiff's argument that Dr. Holcombe's opinion is not persuasive as he allegedly did not review the medical record also fails. It is true that the SSA must provide consultive examiners with relevant medical evidence and records. *See* 20 C.F.R. § 404.1517;

*Brantley v. Comm'r of Soc. Sec.*, 637 F. App'x 888, 894 (6th Cir. 2016).  But Plaintiff does not

argue here that the SSA failed to provide the necessary medical records or information to Dr.

Holcombe.[22]  Instead, Plaintiff argues Dr. Holcombe did not review Plaintiff's medical records

and so his opinion is less persuasive than Dr. Garrott's.

     For starters, Dr. Holcombe's opinion states that he did review Plaintiff's medical records.

In fact, on his report, next to "Procedures Utilized," Dr. Holcombe noted "Review of Available

Records."  (ECF No. 11-13 at PageID 1185.)  But even if he did not, the Court is unaware of any

requirement that a consultive examiner review the relevant medical records, and Plaintiff cites no

case or rule that requires an examining consultive physician to review medical records for their

opinion to be persuasive.[23]  And, under 20 C.F.R. § 404.1520c(c)(1)–(5), whether a physician

reviewed the plaintiff's medical records is only one relevant factor in deciding the

persuasiveness of the physician's opinion.

     In sum, Plaintiff's arguments here fail.  The Court finds that the ALJ considered the

factors under 20 C.F.R. § 404.1520c(c)(1)–(5) and provided enough explanation to support his

---

[22] Even if Plaintiff had made this argument, it would fail.  Next to "Procedures Utilized," Dr.
Holcombe noted in his opinion "Review of Available Records," and Plaintiff has provided no
proof or directed the Court to any place in the record suggesting Dr. Holcombe did not receive
the required medical records.  *Compare Maze v. Colvin*, No. 16-CV-1138-TMP, 2018 WL
3599968, at *4 (W.D. Tenn. July 27, 2018) ("Unlike in *Brantley*, [the consultive examining
doctors] stated in their opinion that they performed a 'Review of Records.'  [Plaintiff] has not
provided any evidence to show that 20 C.F.R. § 404.1517 has been violated."), *and Merritt v.
Comm'r of Soc. Sec.*, No. 320CV00467CRSCHL, 2022 WL 1134295, at *9 (W.D. Ky. Feb. 7,
2022), *report and recommendation adopted Merritt v. Kijakazi*, No. 3:20-CV-467-CRS, 2022
WL 822164 (W.D. Ky. Mar. 18, 2022) ("Unlike in *Brantley* and the other opinions cited above,
[the consultive examiner] was not provided with *no* objective medical evidence."), *with Goppert
v. Berryhill*, No. 3:16-CV-02739, 2018 WL 513435, at *9 (M.D. Tenn. Jan. 23, 2018), *report
and recommendation adopted*, No. 3:16-CV-0239, 2018 WL 1138533 (M.D. Tenn. Mar. 1,
2018) ("[The consultive examiner] noted that no medical records were available.").
[23] On the other hand, a *non-examining* consultive physician must review medical records.

conclusion.  And so, the Court affirms the ALJ's finding that Dr. Holcombe's opinion was more persuasive than Dr. Garrott's.

### 4.    Dr. Thomas Thrush

For the first time in her reply brief, Plaintiff challenges the ALJ's finding that Dr. Thrush's opinion is persuasive.  (ECF No. 16 at PageID 1461.)  As Plaintiff did not include this alleged error in her statement of issues, it is waived.[24]  *Blount v. Colvin*, No. 5:13 CV 1709, 2014 WL 4231182, at *10 (N.D. Ohio Aug. 21, 2014); *Gleason v. Comm'r of Soc. Sec.*, No. 3:13-CV-231, 2014 WL 3734322, at *4 (S.D. Ohio July 28, 2014), *report and recommendation adopted*, *Gleason v. Colvin*, No. 3:13-CV-231, 2014 WL 4348247 (S.D. Ohio Sept. 2, 2014) ("By failing to present this argument in his Statement of Errors, the Court finds such argument waived.").  But even if she had made this argument initially, it would not succeed.

Dr. Thomas Thrush is a state agency medical consultant.  (ECF No. 11-4 at PageID 155.)  And the ALJ found Dr. Thrush's opinion persuasive, given Dr. Thrush reviewed the medical records and cited specific clinical findings like Plaintiff's MRI studies.  (ECF No. 11-3 at PageID 57–58.)  The ALJ further found that Dr. Thrush has program knowledge related to disability and that his opinion was consistent with the medical evidence.  (*Id.*)  And so the ALJ adequately explained the relevant factors and substantial evidence supports his finding that Dr. Thrush's opinion is persuasive.  *See* 20 C.F.R. § 404.1520c(c)(1)–(5).

But Plaintiff argues in her Reply that the ALJ erred because (1) Dr. Thrush considered only limited medical evidence about Plaintiff's spinal disorder and (2) Dr. Thrush did not

---

[24] Although Plaintiff failed to raise alleged errors based on Dr. Thrush's opinion at first, the SSA argued in its response brief that Dr. Thrush's opinion is persuasive.  Then in her Reply, Plaintiff argues Dr. Thrush's opinion is unpersuasive.  But since Plaintiff alleged no errors relating to the ALJ's treatment of Dr. Thrush's opinion, this briefing from both sides about Dr. Thrush was unnecessary.

reference Plaintiff's medications or other medical conditions.  (ECF No. 16 at PageID 1461.)

But the Court finds Plaintiff's position unpersuasive.  Dr. Thrush's opinion shows that he

considered many of the imaging studies of Plaintiff's spine.  (ECF No. 11-4 at PageID 150.)  He

also considered Dr. Overstreet's opinion.  (*Id.*)  And contrary to Plaintiff's contention, the ALJ's

opinion did not focus only on Plaintiff's spine issues.  (ECF No. 11-4 at PageID 149.)  Indeed, he

discussed her Botox injections, noted that medicine controlled her urinary urgency, and

mentioned that she had complained of dizziness multiple times.  (*Id.*)

     In sum, Plaintiff's argument here fails, both on the merits and because it is waived.  The

Court finds that the ALJ considered the factors under 20 C.F.R. § 404.1520c(c)(1)–(5) and

provided enough explanation to support his conclusion.  And so, the Court affirms the ALJ's

finding that Dr. Thrush's opinion is persuasive.

### E.    Substantial Evidence

     In the end, all of Plaintiff's alleged errors related to the ALJ's findings on Plaintiff's RFC

fail.  Accordingly, and after a review of the record, the Court finds that substantial evidence

supports the ALJ's findings and decision on Plaintiff's RFC.

## VII.  Prior Job and Credibility

     Lastly, Plaintiff argues that the ALJ improperly assessed her credibility.  At the hearing,

Plaintiff testified about her prior work at Smith & Nephew.  And she explained that she was

"able to work from home.  But then it just got -- you know you know they didn't want me

working from home as much as I need to.  And it got to -- just became too difficult."  (ECF No.

11-3 at PageID 79.)  The ALJ responded: "Yeah.  Well, flash forward a couple of years and

everybody's working from home, you know…so I don't know about that."  (*Id.*)

About this exchange, Plaintiff argues that the "ALJ's questioning of [Plaintiff's] credibility and [the] claim that her job required her to work onsite rather than at home is without any basis in fact and is merely the ALJ's personal opinion." (ECF No. 13 at PageID 1433.) Plaintiff adds, "ALJ's are no longer supposed to make an assessment of a Claimant's credibility, especially as the hearing was conducted by telephone and the ALJ could not see [Plaintiff] while she testified at the hearing." (*Id.*) To support her position, Plaintiff cites SSR 16-3p, which provides the SSA's policy about credibility determinations. In relevant part, SSR 16-3p states, "In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).

The SSA responds to Plaintiff's argument, stating "the ALJ was not questioning her veracity, but instead noting that, due to the COVID-19 pandemic, employer's attitudes have changed about working from home." (ECF No. 15 at PageID 1455.) The SSA further argues, "[i]f the ALJ questioned the veracity of her statements, the ALJ would have found that she could return to that work. The ALJ did not error by simply noting that the availability of working from home had changed since Plaintiff last worked." (*Id.*)

The Court finds SSA's position persuasive. The ALJ did not comment on Plaintiff's character or truthfulness. (*See* ECF No. 11-3 at PageID 79.) Indeed, the ALJ did not discredit her statement because of any view he held toward Plaintiff's character or trustworthiness. (*Id.*) Instead, the ALJ commented on her speculative statement given the state of the world. (*Id.*) What is more, in his decision, the ALJ did not mention Plaintiff's character or truthfulness. (*See*

ECF No. 11-3 at PageID 44–61.)  And lastly, any error here would be harmless because the ALJ found that Plaintiff could not return to this prior position.  (*Id.* at PageID 59–60.)

## <u>CONCLUSION</u>

In the end, the Court finds that substantial evidence supports the ALJ's decision and finds no legal error.  Accordingly, and for the reasons above, the Court **AFFIRMS** the Commissioner's decision that Plaintiff is not disabled under the Social Security Act.

**SO ORDERED,** this 27th day of March, 2025.

s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE